**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TOMMY BAHAMA GROUP, INC.,

                              Plaintiff,

vs.                                                        Case No. 3:09-cv-641-J-32JRK

CHRISTOPHER A. EAGLE,
LARRY W. EAGLE,
A&B CARIBBEAN PARTNERS LIMITED
f/k/a ANTIGUA ENTERPRISES,

                              Defendants.

_____

<u>**ORDER**</u>

This trademark infringement case is before the Court on Defendant Larry W. Eagle's

("Larry Eagle") motion to dismiss for lack of personal jurisdiction, improper venue, and failure

to state a claim (Doc. 38); Plaintiff Tommy Bahama Group, Inc.'s ("Tommy Bahama")

response (Doc. 45); and Defendant's reply thereto (Doc. 49).  The Court has considered the

motion, response, and reply, as well as evidentiary support filed by Plaintiff and Defendant.

Docs. 38-1, 45-1, 45-2, 45-3, 45-4, 45-6, 45-7, 49-1.  Additionally, on July 20, 2010, the

Court held an evidentiary hearing on the issue of personal jurisdiction to resolve issues of

disputed fact raised by the parties' affidavits.  Doc. 54.

**I.  Background**

Plaintiff is a Delaware corporation with its principal place of business in Seattle,

Washington.  The amended complaint identifies Defendant A&B Carribean Partners Limited

("A&B") as a corporation incorporated in Antigua & Barbuda with its principal place of

business in Florida.  Doc. 36 at 2.  Whereas Defendant Christopher A. Eagle ("Christopher Eagle") is asserted to be a resident of the state of Florida, id., Larry Eagle is a resident of Virginia. Doc. 45 at 4; Declaration Under Penalty of Perjury of Larry Eagle (Doc. 38-1) at 1.

The action arises out of Defendants' purported wrongful use of Tommy Bahama marks in the course of offering merchandise and conducting business.  According to Plaintiff, Defendants have attempted to brand themselves as Tommy Bahama and have solicited and obtained funding from investors by falsely claiming affiliation with the company. In addition to describing efforts undertaken to open stores outside of the country under the Tommy Bahama name, the amended complaint alleges that sometime before May 15, 2009, Defendants created a website in which they held themselves out as Tommy Bahama and offered Tommy Bahama products for sale.  Doc. 36 at 9.  Not only does it allege that the website contained images almost identical to the Tommy Bahama logo, it also claims Defendants copied product descriptions verbatim from the company's official website.  Id. at 11.

The amended complaint alleges that the infringing conduct was continued when Christopher Eagle visited a Florida Tommy Bahama retail location.  While there, he misled the store manager into believing he was an employee of Tommy Bahama's parent company. Id. at 12-13.  He is similarly alleged to have misrepresented himself to a California company in an effort to obtain celebrity endorsements for A&B.  Id. at 14.  Further, Plaintiff asserts the Eagles wrongfully used Tommy Bahama Marks to solicit investment in their company.  Id. at 15.

Based on the above, the amended complaint alleges claims of trademark infringement, in violation of 15 U.S.C. § 1114(1); unfair competition, in violation of 15 U.S.C. § 1125(a)(1)(A); trademark dilution, in violation of 15 U.S.C. § 1125(c); cyberpiracy, in violation of 15 U.S.C. § 1125(d); common law trademark infringement; common law unfair competition; and unfair and deceptive trade practices, in violation of Fla. Stat. §§ 501.201, et seq.

## II. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

### A. Legal Standards

"The plaintiff is required to plead sufficient material facts to form a basis for in personam jurisdiction.  Once the plaintiff meets this burden, the burden shifts to the defendant to challenge the plaintiff's complaint by affidavits or other pleading." Wallack v. Worldwide Mach. Sales, Inc., 278 F. Supp.2d 1358, 1364 (M.D. Fla. 2003).  If the defendant refutes the allegations supporting jurisdiction, the burden shifts to the plaintiff to establish by counter-affidavit the basis for personal jurisdiction.  Id.

"[W]here the plaintiff's complaint and the defendant's affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff." Id.  If, however, the relevant jurisdictional facts are in direct conflict, the court should hold a limited evidentiary hearing on the issue of jurisdiction.  See id.  When an evidentiary hearing is held to resolve the issue, the plaintiff "ha[s] the burden of establishing jurisdiction by a preponderance of the evidence." Resolution Trust Corp. v. Pharaon, 915 F. Supp. 351, 358 (S.D. Fla. 1996); see Venezia Amos, LLC v. Favret, 3:07cv146/MCR, 2008 WL 410163, at *4 n. 21 (N.D. Fla. Feb. 12, 2008).

3

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  First, the district court must "consider the jurisdictional question under the state long-arm statute."  Id.  If a basis for personal jurisdiction exists under the state statute, it must then ascertain "whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Id. (internal quotation marks omitted).  "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant."  Id.

### B.  Discussion

#### i.  General Jurisdiction

According to Larry Eagle, he "conducted no meaningful activities in the forum state," and thus, "there c[an] be no finding of jurisdiction under any general jurisdiction analysis." Doc. 38 at 9 n.2; see also Declaration Under Penalty of Perjury of Larry Eagle (Doc. 38-1) at 1 ("I have never transacted or conducted any business in the State of Florida.").  Even if the asserted contacts had some factual basis, they are "insufficient to establish the continuous and systematic general business contacts necessary for general jurisdiction." Doc. 49 at 5.

Section 48.193(2) of Florida's long-arm statute defines general jurisdiction under Florida law.  It provides: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."

4

Fla. Stat. § 48.193(2).   "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment."   Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010) (citing Woods v. Nova Cos. Belize, 739 So.2d 617, 620 (Fla. Dist. Ct. App. 1999)).   To that end, the contacts must be "continuous and systematic to support the exercise of general jurisdiction." Id. (internal quotation marks omitted).

Plaintiff argues "[t]he Court has general personal jurisdiction over Larry Eagle because he and A&B have engaged in continuous and systematic business activities within Florida that have yielded great pecuniary benefit."  Doc. 45 at 13.  In support of its position, Plaintiff relies on the claim that Larry Eagle bought and shipped "significant amounts of Tommy Bahama merchandise" in Florida.  Id.

At the hearing, Larry Eagle testified that he never personally purchased any apparel from Tommy Bahama on behalf of the A&B, or directed anyone to do so.  Regardless, "purchases from Florida entities do not, standing alone, warrant the exercise of general jurisdiction[.]"   Kertesz v. Net Transactions, Ltd., 635 F.Supp. 2d 1339, 1346 (S.D. Fla. 2009); see Fraser, 594 F.3d at 846 (11th Cir. 2010) ("[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984))). The subsequent shipping of the goods out of the state would not seem to provide any additional basis for jurisdiction.

According to Plaintiff, though, Larry Eagle's contacts with Florida were "not limited to the purchase and shipping of Tommy Bahama merchandise.  In the summer of 2009, Larry Eagle purposefully availed himself of the privilege of conducting business in Florida by

5

communicating with Florida residents for the specific purpose of inducing them to invest in the Unlawful Scheme." Doc. 45 at 13. Plaintiff also submitted an Affidavit from a former employee of A&B, who claimed Larry Eagle communicated with unnamed business brokers in Tampa, Florida, in an effort to identify potential purchasers of A&B. Affidavit of Casey L. Seymour (Doc. 54-4); see also untitled email (Doc. 54-1) (email, purportedly from Larry Eagle, mentioning possible interest of Tampa investors).

When questioned at the hearing about the purported solicitations, Larry Eagle again denied all allegations that he ever attempted to solicit investment in A&B from any individual in Florida. While he did acknowledge speaking with two A&B investors, he claimed the conversations were not on behalf of the company, but were personal in nature. Nevertheless, even if the Court were to accept Plaintiff's allegations that Larry Eagle made several phone calls to Florida residents in hopes of soliciting investment in A&B, this would not rise to the level of continuous and systematic contacts. The occasional solicitation of business, even when considered in combination with the other asserted contacts, is not enough to establish general jurisdiction. Cf. Fraser, 594 F.3d at 846-47; Musiker v. Projectavision, Inc., 960 F.Supp. 292, 297 (S.D. Fla. 1997) (holding that solicitation in the form of telephone calls, delivery of written material via mail and fax, and an instate presentation did not constitute substantial and not isolated conduct).

### ii. Specific Jurisdiction

### a. State Long-Arm Statute

With respect to the exercise of specific jurisdiction in this forum, Florida's long-arm statute provides, in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> > (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> > (b) Committing a tortious act within this state.

Fla. Stat. § 48.193.

Plaintiff contends "[t]he Court has specific personal jurisdiction over Larry Eagle because the sum of his collective business activities shows a general course of business activity within Florida for pecuniary benefit, and the alleged business activities were in furtherance of the Unlawful Scheme." Doc. 45 at 14.  In the alternative, Plaintiff argues that "[t]he mere accessibility of A&B's infringing websites and Larry Eagle's relation, ownership and control of A&B subjects him to the long-arm of Florida courts." Id. at 11.

For its argument that Larry Eagle conducted business within Florida, Plaintiff relies on the same contacts it alleged to be continuous and systematic for the purpose of general jurisdiction–purchases and solicitation of investment.  "A purchase of goods or services inures to the seller's pecuniary benefit, not to the purchaser's[,]" and thus, does little to establish a general course of business under the long-arm statute. Fraser, 594 F.3d at 848. Solicitation, on the other hand, "is one factor the courts consider in deciding whether a company is conducting business in Florida[.]" Id. (internal quotation marks omitted).  For the most part, Plaintiff does not allege Larry Eagle personally conducted activities within this

forum. Instead, it argues "[t]his Court has personal jurisdiction over Larry Eagle by virtue of his activities in controlling and directing the actions of A&B." Doc. 45 at 9.

Plaintiff primarily relies on the testimony of Christopher Eagle to show Larry Eagle was a controlling force within A&B. See, e.g., Deposition of Christopher A. Eagle (Doc. 45-1) at 16 (representing that Larry Eagle was an officer of A&B), 27 (stating Larry Eagle was the president of A&B). Yet, subsequent to making his initial statements regarding his father's position within the company, Christopher Eagle signed a declaration minimizing his father's role. Declaration Under Penalty of Perjury of Christopher Eagle (Doc. 49-1) ("At no time did Larry Eagle ever direct or control the operations of A&B . . . . He certainly did not ever direct, control, authorize, or participate in any of the trademark infringement alleged in the Amended Complaint."). Further, at the hearing, Larry Eagle denied any involvement in the company. He testified that he was never the president, CEO, or a member of A&B's executive team; and that he never directed Christopher Eagle's activities with respect to the company. Even assuming Larry Eagle did hold some operational position in A&B, jurisdiction may not rest solely on the fact that Defendant was an officer or agent of A&B.

"In general, the activities of an officer on behalf of a corporation do not confer jurisdiction over the officer individually." Knights Armament Co. v. Optical Sys. Tech., Inc., No. 6:07-cv-1323-Orl-22KRS, 2008 WL 2157108, at *4 (M.D. Fla. May 21, 2008) (internal quotation marks omitted). An exception exists in "that personal participation by a corporate officer in the wrongful activities of a corporation is sufficient to make the individual, as well as the corporation, substantially liable for a tort[.]" Id. (quoting Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 851 (11th Cir. 1988)) (ellipses omitted). Yet,

8

> if the claim against the corporate agent rests on nothing more
> than that he is an officer of the nonresident corporation, and if
> any connection he had with the commission of the tort occurred
> without the forum state[,] under sound due process principles,
> the nexus between the corporate agent and the forum state is
> too tenuous to support jurisdiction over the agent personally
> under the long-arm statute of the forum state.

Id. (quoting Delong Equip. Co., 840 F.2d at 852) (internal quotation marks, bracketing, and ellipses omitted).

Aside from the unsupported allegations that Larry Eagle was intimately involved in directing, ratifying and participating in the infringing activities, see, e.g., Doc. 45 at 9-10, and Christopher Eagle's inconsistent testimony referencing Larry Eagle's position in the company, Plaintiff presents no evidence in support of Larry Eagle's personal involvement in any significant activities within Florida.  Larry Eagle submitted a signed declaration stating he has not been to Florida since 1984 (for vacation), and has "never operated, conducted, engaged in, or carried on any business or business venture in the State of Florida." Declaration Under Penalty of Perjury of Larry Eagle (Doc. 38-1) at 1.  He reiterated those statements at the hearing.  Despite Plaintiff's arguments to the contrary, its own evidence appears to confirm these representations.

Regarding the alleged solicitation of Florida residents, as discussed above, Plaintiff references communications with only two specific Florida investors, Dale Moody and Michael Whitehead.  See Doc. 45 at 5.  When questioned at the hearing, though, Larry Eagle denied ever talking to these individuals about investing, and the evidence filed by Plaintiff tends to indicate it was not he, but Christopher Eagle, who solicited their investment.

See Deposition of Dale L. Moody (Doc. 45-6) at 15 (stating "[t]hat's when [Christopher Eagle] asked me to consider investing in his business"), 21 (stating that his check for investment was made out to Christopher Eagle); Affidavit of Michael John Whitehead (Doc. 45-7) at 1 ("[Christopher] Eagle contacted me about investing in a company.").  At the hearing, Plaintiff also submitted evidence that Larry Eagle was working to find potential investors from Tampa, Florida, see Docs. 54-1, 4; however, Defendant testified that the evidence was not accurate and maintained he never contacted anyone in Florida about investing in A&B.

A review of the record reveals, at most, only slight personal participation by Larry Eagle in A&B business activities within Florida.  The evidence indicates that Larry Eagle placed a few phone calls to Dale Moody, presumably at his residence in Florida, to obtain his opinions on A&B's business plan for selling product in the Caribbean, see Deposition of Dale L. Moody (Doc. 45-6) at 18, 23, 28, and on another occasion, made a call to Charles Whitehead at his Jacksonville office to assure him that he would soon be receiving stock certificates, which apparently he never did.  Affidavit of Michael John Whitehead (Doc. 45-7) at 2. Evidence was also presented indicating that Larry Eagle attempted to locate investors in Tampa, Florida.  See Docs. 54-1, 4.  Larry Eagle disputes that any contacts with persons in Florida related to investment in A&B.  Nevertheless, to the extent Plaintiff's evidence is accepted as true, these activities do not support a finding that Defendant individually engaged in a general course of business within Florida.  Nor do any of Larry Eagle's alleged activities relate to the wrongful use of Tommy Bahama marks.

Plaintiff also fails to reference any evidence showing Larry Eagle personally participated in allegedly tortious conduct within the forum.  Plaintiff argues that jurisdiction arises from an infringing A&B website and that because Larry Eagle owns and controls A&B, the "mere accessability" of its website in Florida subjects him to specific personal jurisdiction pursuant to Fla. Stat. § 48.193(1)(b).  Doc. 45 at 11.

In a claim for trademark infringement based on an infringing website, the accessibility of a website in Florida may sometimes be enough to satisfy section 48.193(1)(b).  Family Watchdog, LLC v. Schweiss, No. 6:09-cv-296-ORL-28GJK, 2009 WL 2151152, at *4 (M.D. Fla. July 13, 2009) (citing Licciardello v. Lovelady, 544 F.3d 1280, 1283-84 & n.2 (11th Cir. 2008)); cf. Internet Solutions Corp v. Marshall, No. 08-12328, 2010 WL 2899171, at *2-3 (11th Cir. July 27, 2010) (per curiam) (finding that a non-resident defendant, who owned and operated a website, was subject to the Florida long-arm statute where she allegedly posted defamatory material about a corporation with its principal place of business in Florida, which was then accessed in Florida).  However, here Plaintiff is not a Florida corporation, nor is Florida its principal place of business.  Moreover, Larry Eagle testified that he held no ownership interest in A&B and denied any responsibility for the creation or operation of the website.  The evidence offered by Plaintiff points strictly to Christopher Eagle being the one in control of the site.  See, e.g., Deposition of Dale L. Moody (Doc. 45-6) at 58 ("I know Chris was developing a website for Grand Caymans.").  Plaintiff submits no evidence that Larry Eagle personally engaged in or directed the allegedly tortious conduct within Florida. Cf. Knights Armament Co., 2008 WL 2157108, at *4 (noting that, generally, the activities of an officer on behalf of a corporation do not confer jurisdiction over the officer individually

11

unless the officer has personally participated in the wrongful activities of the corporation such that he or she would be substantially liable for a tort).

### b. Constitutional Limits

Even if Larry Eagle's conduct satisfied the long-arm statute, due process would dictate against the exercise of jurisdiction. "In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: they 'must be related to the plaintiff's cause of action or have given rise to it'; they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;' and they 'must be such that the defendant should reasonably anticipate being haled into court there.'" Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir.2007) (quoting McGow v. McCurry, 412 F.3d 1207, 1214 (11th Cir.2005)).

Larry Eagle is never alleged to have traveled to Florida. The entirety of his purported contacts include a few telephone calls and emails, none of which appear to involve any significant act by which he purposefully availed himself of the privilege of conducting activities within the forum. As discussed above, at most, the evidence indicates his contact with Mr. Moody was related to the starting of a business outside of the country, and his call to Mr. Whitehead was merely to confirm A&B was in receipt of money and that stock certificates would be arriving shortly. The only other evidence of contact with Florida is some vague reference to communications with individuals in Tampa about finding potential investors for the company.

Further, to the extent the infringing website could be attributed to Larry Eagle, it also would not be enough. "Intentional torts . . . may support the exercise of personal jurisdiction

12

over the nonresident defendant who has no other contacts with the forum." <u>Licciardello</u>, 544 F.3d at 1285.  However, cases considering the question of jurisdiction based on intentional torts have often used what is referred to as the "effects" test. <u>Id.</u> at 1285-86.  When using the test, courts should consider whether "the commission of an intentional tort [was] expressly aimed at a specific individual in the forum whose effects were suffered in the forum." <u>Id.</u> at 1288.  Plaintiff is not a Florida resident, and there is no indication the website included content particularly directed at Florida.  Thus, even assuming Larry Eagle was responsible for the infringing content of the website, it was not calculated to cause injury to an individual in Florida, and Larry Eagle should not have anticipated being haled into court in Florida based thereon.

Plaintiff is a Delaware corporation, with its principal place of business in Washington State, and fails to highlight any injury suffered by a Florida resident in this action.  In addition, while it claims the unlawful scheme was substantially furthered in this state, a great deal of the activities, particularly in relation to Larry Eagle, seem concentrated in other states, or outside the country entirely.  Florida's relationship to Larry Eagle is simply too attenuated to meet the requirements of due process.

Plaintiff has failed to prove by a preponderance of the evidence that this Court has jurisdiction over the person of Larry Eagle.  As this Motion is due to be granted for lack of personal jurisdiction, the Court need not address Defendant's motion in relation to his claims of improper venue and failure to state a claim.

Accordingly, it is hereby

**ORDERED**:

1.  Defendant Larry Eagle's Rule 12 Motion to Dismiss (Doc. 38) is **GRANTED IN PART**, to the extent that the Court finds that it does not have personal jurisdiction over Defendant Larry Eagle.  Defendant Larry Eagle is **DISMISSED WITHOUT PREJUDICE** from this action.

2.  **No later than September 16, 2010**, the parties should either file a Case Management Report or a joint statement of the status of the case and how the parties wish to proceed.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of August, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

Copies:

counsel of record
pro se parties